OPINION
{¶ 1} Defendant, Lamar Lenoir, appeals from his conviction and sentence for murder.
 {¶ 2} In the early morning hours of February 13, 1994, Patty Davis, her husband Chuck Davis, and their friends Larry Stewart and Greta Shafer, went to the Frisch's restaurant at *Page 2 
4301 North Main Street in Harrison Township. Larry Stewart walked past a table occupied by several African-American males, who included Stanley Williams, Kirby Peterson and Defendant, Lamar Lenoir. In walking past the table, Stewart moved a chair that was blocking his path. That offended Williams, who had his feet on the chair. Williams jumped up and threw a punch at Stewart. The two men exchanged blows. Defendant Lenoir joined in the fight. After Larry Stewart was hit in the face with a chair, Chuck Davis came to Stewart's aid. At that point Defendant pulled out a .40 caliber Glock semi-automatic handgun and fired it at Davis. The shot missed Davis but struck Kirby Peterson in the hand.
 {¶ 3} Panic followed, and people began ducking and running out of the restaurant through emergency exits. Stewart and Shafer crawled into the kitchen. Williams and Defendant ran out the front door. Patty Davis pursued Defendant Lenoir, yelling at him to stop. As Patty Davis stepped outside, Defendant approached the front of the restaurant with the same handgun he had fired at Chuck Davis. Patty Davis turned to get out of the way, but Defendant opened fire on her. One of the shots struck Davis in the back, severing her spinal cord and piercing her aorta, which caused her death. Defendant Lenoir and Williams quickly fled the scene in Williams' *Page 3 
vehicle, leaving Kirby Peterson behind.
 {¶ 4} Peterson sat at a table inside the restaurant until police arrived. Peterson denied knowing the shooter, and lied to police about who he came to the restaurant with because he did not want to implicate his friends in the shooting. Another person who witnessed this shooting and knew the shooter, Aisha Whatley, also refused to talk when interviewed by police because she was afraid. A few days after this shooting when Stanley Williams was interviewed by the police, he told them that Defendant Lenoir was the shooter. Defendant was subsequently arrested for the murder of Patty Davis. Williams later retracted his statement, however, and failed to testify before the grand jury. As a result, Defendant was released and the case went cold.
 {¶ 5} More than seven years later, in the fall of 2001, Defendant brutally attacked his girlfriend, Latonia Adkins, threatening to kill her "like he killed the bitch at Frisch's." Adkins told police what Defendant had said. In 2005, police were finally able to obtain the cooperation of witnesses to the shooting. Kirby Peterson, who was then in federal prison, said he decided to "do the right thing" by disclosing what he knew. On March 15, 2005, Peterson told a Montgomery County Sheriff's detective everything that had *Page 4 
happened. Aisha Whatley also came forward and gave police a written statement on July 19, 2005, as well as identifying Defendant from a photospread as the man who shot and killed Patty Davis.
 {¶ 6} On December 2, 2005, Defendant was indicted on one count of purposeful murder in violation of R.C. 2903.02(A). A firearm specification was attached to the charge. Following a jury trial Defendant was found guilty as charged. The trial court sentenced Defendant to fifteen years to life for the murder, plus an additional and consecutive three year term on the firearm specification, for a total aggregate sentence of eighteen years to life.
 {¶ 7} Defendant timely appealed to this court from his conviction and sentence.
 FIRST ASSIGNMENT OF ERROR {¶ 8} "THE THREE YEAR SENTENCE FOR THE FIREARM SPECIFICATION SHOULD BE REVERSED BECAUSE APPELLANT WAS CONVICTED OF A SPECIFICATION FOR WHICH THE PENALTY IS ONE, AND NOT THREE, YEARS."
 {¶ 9} Defendant argues that the trial court was not authorized to impose a three-year term of incarceration upon his conviction for the firearm specification charged in the indictment because the form of the charge does not satisfy the *Page 5 
requirements of R.C. 2941.145.
 {¶ 10} R.C. 2941.141 requires the court to impose a one-year sentence upon a defendant's conviction for a firearm specification attached to a criminal offense alleged in an indictment if the form of specification charges that the offender "had a firearm on or about the offender's person or under the offender's control while committing the offense." That is the form of the specification charged in this case.
 {¶ 11} R.C. 2941.145 permits the court to instead impose a three-year sentence, but only if, in addition to possession or control of the firearm, the indictment alleges that the offender "displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense."
 {¶ 12} The law that governs is that which existed at the time the offense was committed. State v. Gettys (1976), 49 Ohio App.2d 241. "A statute is presumed to be prospective in its application unless expressly made retrospective." Van Fossen v. Babcock Wilcox Co.
(1988), 36 Ohio St.3d 100; Hyle v. Porter, 117 Ohio St.3d 165,2008-Ohio-542.
 {¶ 13} By its terms, R.C. 2941.145 is not retrospective. Further, because Defendant's murder offense to which the firearm specification is attached was committed in 1994, and *Page 6 
R.C. 2941.145 did not become effective until 1996, R.C. 2941.145 cannot apply to the sentence the court imposed.
 {¶ 14} In 1994, R.C. 2929.71(A) permitted the court to impose a three-year term of incarceration upon an offender's conviction for a firearm specification, but only if the charge conformed to the requirements of R.C. 2929.141, as that section then existed. The section, as it does today, prescribed the form of the charge to appear in the indictment. However, with respect to the offender's conduct, former R.C. 2941.141(A) merely required the specification to charge that "the offender had a firearm on or about his person or under his control while committing the offense."
 {¶ 15} The specification of which Defendant was convicted was, as charged in the indictment, consistent with the requirements imposed by R.C. 2929.141 in 1994. No additional allegations that he displayed, brandished, or used the firearm were required in order to permit the court to impose the three-year sentence then prescribed by R.C.2929.71(A).
 {¶ 16} The first assignment of error is overruled.
 SECOND ASSIGNMENT OF ERROR {¶ 17} "THE TRIAL COURT DENIED APPELLANT A FAIR TRIAL AS GUARANTEED BY THE STATE AND FEDERAL CONSTITUTIONS WHEN IT LET THE PROSECUTION PRESENT EVIDENCE THAT APPELLANT HAD COMMITTED *Page 8 
OTHER CRIMINAL ACTS."
 {¶ 18} Defendant complains about the admission of prohibited "other acts" evidence, including: (1) the fact that Defendant sold drugs; (2) that Defendant owned and carried around two guns, one of which was not the murder weapon; (3) that Defendant threatened to kill Stanley Williams after learning that Williams had cooperated with the police and implicated Defendant in the shooting of Patty Davis; (4) that Defendant brutally beat his girlfriend, Latonia Adkins, during which assault Defendant threatened to kill her "like he killed the bitch at Frisch's; "(5) that Defendant attempted to bribe Adkins with drugs so she wouldn't testify against him in the assault case; and, (6) the fact that years before this murder occurred Defendant was stabbed in the front yard of Aisha Whatley's home, which is how Whatley, an eyewitness to this murder, recognized Defendant when he shot Patty Davis.
 {¶ 19} Despite filing motions in limine to exclude other acts evidence, which the trial court apparently never ruled on, Defendant failed to object at trial at the time this "other acts" evidence was admitted. Therefore, he has waived all but "plain error." In State v.Barnes 94 Ohio St.3d 21, 2002-Ohio-68, the Ohio Supreme Court wrote:
 {¶ 20} "Under Crim.R. 52(B), `p]lain errors or defects *Page 8 
affecting substantial rights may be noticed although they were not brought to the attention of the court.' By its very terms, the rule places three limitations on a reviewing court's decision to correct an error despite the absence of a timely objection at trial. First, there must be an error, i.e., a deviation from a legal rule. State v.Hill (2001), 92 Ohio St.3d 191, 200, 749 N.E.2d 274, 283 (observing that the `first condition to be met in noticing plain error is that there must be error'), citing United States v. Olano, (1993), 507 U.S. 725,732, 113 S.Ct. 1770, 1776, 123 L.Ed.2d 508, 518 (interpreting Crim.R. 52[B]'s identical federal counterpart, Fed.R.Crim.P. 52[b]). Second, the error must be plain. To be `plain' within the meaning of Crim.R. 52(B), an error must be an `obvious' defect in the trial proceedings. State v.Sanders (2001), 92 Ohio St.3d 245, 257, 750 N.E.2d 90, 111, citingState v. Keith (1997), 79 Ohio St.3d 514, 518, 684 N.E.2d 47, 54;see, also, Olano, 507 U.S. at 734, 113 S.Ct. at 1777, 123 L.Ed.2d at 519
(a plain error under Fed.R.Crim.P. 52[b] is `"clear" or, equivalently, "obvious"' under current law). Third, the error must have affected `substantial rights.' We have interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial. See, e.g., Hill, 92 Ohio St.3d at 205, *Page 9 749 N.E.2d at 286; State v. Moreland (1990), 50 Ohio St.3d 58, 62, 552 N.E.2d 894,899; State v. Long (1978), 53 Ohio St.2d 91, 7 O.O.3d 178,372 N.E.2d 804, paragraph two of the syllabus." Id.., at 27.
 {¶ 21} "`Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. All relevant evidence is admissible, unless otherwise excluded by constitution, statute, or rule. Evid.R. 401. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show conformity therewith on a particular occasion, but may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Evid.R. 404(B).
 {¶ 22} Latonia Adkins' testimony that Defendant threatened to kill her "like he killed the bitch at Frisch's" is an admission which is relevant to prove the offense of murder with which Defendant was charged. The fact that it occurred during his beating of Adkins is background information explanatory of the statement Defendant made, and not inadmissible as an "other act." *Page 10 
 {¶ 23} Some of the other acts evidence, including the testimony surrounding Defendant's ownership and possession of two guns, Defendant's threat to kill Stanley Williams, and the fact that years before this murder Defendant was stabbed in Aisha Whatley's front yard, which is how she recognized Defendant when he shot Patty Davis, is relevant and admissible per Evid.R. 404(B) to prove Defendant's identity as the shooter, which was the principal issue in this case. However, the fact that Defendant sold drugs, and that he tried to bribe Latonia Adkins with drugs so she wouldn't testify against him in the assault case, is not relevant or admissible per Evid.R. 404(B) to prove that Defendant shot Patty Davis.
 {¶ 24} Adkins' testimony that Defendant tried to bribe her with drugs so she wouldn't testify against him in the assault case was elicited on cross-examination by defense counsel. Therefore, if admission of that other acts evidence was error, it was invited error. Under the doctrine of "invited error," an appellant is barred from attacking a judgment because of an error for which the appellant was responsible. State exrel. The V Cos. V. Marshall, 81 Ohio St.3d 467, 1998-Ohio-329.
 {¶ 25} Admission of the other acts evidence that Defendant sold drugs was improper. In any event, the overwhelming evidence of Defendant's guilt, which includes the testimony of *Page 11 
two eyewitnesses to the shooting of Davis, Peterson and Whatley, who positively identified Defendant as the shooter, plus Defendant's implicit admission to Latonia Adkins that he killed Davis, prevents a finding that but for the admission of improper other acts evidence the outcome of Defendant's trial clearly would have been different.Barnes. No plain error is demonstrated.
 {¶ 26} The second assignment of error is overruled.
 THIRD ASSIGNMENT OF ERROR {¶ 27} "TRIAL COUNSEL WAS INEFFECTIVE UNDER THE SIXTH AMENDMENT OF THE CONSTITUTION FOR FAILING TO ADEQUATELY OBJECT TO THE `OTHER ACTS' EVIDENCE."
 {¶ 28} Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance. Strickland v. Washington (1984),466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must affirmatively demonstrate to a reasonable probability that were it not for counsel's errors, the result of the trial would have been different.Id., State v. Bradley (1989), 42 Ohio St.3d 136. Further, the threshold inquiry should be whether a defendant was prejudiced, not *Page 12 
whether counsel's performance was deficient. Strickland.
 {¶ 29} Defendant complains that his defense counsel performed deficiently at trial by failing to object to the inadmissible "other acts" evidence. Even if that is true with respect to the evidence that Defendant sold drugs, given the strength of the State's case, discussed in the second assignment of error, there is no reasonable probability of a different result in this trial even had defense counsel objected to the inadmissible other acts evidence and the trial court had excluded it. No prejudice as defined by Strickland is demonstrated.
 {¶ 30} The third assignment of error is overruled.
 FOURTH ASSIGNMENT OF ERROR {¶ 31} "THE PROSECUTION COMMITTED MISCONDUCT AND DENIED APPELLANT A FAIR TRIAL, AS GUARANTEED BY THE DUE PROCESS CLAUSES OF THEFOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTION TEN OF THE OHIO CONSTITUTION."
 {¶ 32} The test for prosecutorial misconduct is whether the prosecutor's acts were improper in their nature and character and, if they were, whether the defendant's substantial rights to a fair trial were prejudiced as a result. State v. Smith (1984), 14 Ohio St.3d 13. *Page 13 
 {¶ 33} Defendant complains that several of the prosecutor's comments during the rebuttal portion of the State's closing argument were improper and constituted misconduct. Defendant did not object at trial to any of the comments about which he now complains on appeal. Therefore, he has waived all but plain error.
 {¶ 34} During the State's rebuttal closing argument, in commenting on the defense closing argument, the prosecutor stated that if the law is against you, then you argue the facts, and if the facts are against you, then you argue the law, but if both the facts and the law are against you, then you divert the jury's attention by having it think of other things. The prosecutor also told the jury that their job was to take the instructions given by the judge, apply them to the evidence that came from the witness stand, and stay on that path. These comments were a direct response to Defendant's closing argument, which referred to matters that were not presented as evidence in this case and appealed to the jurors' emotions. The prosecutor's comments redirected the jurors' attention to the evidence that came from the witness stand. Those comments were not improper.
 {¶ 35} The prosecutor also commented during his rebuttal closing argument that "they (the defense) have the same *Page 14 
subpoena power the State has." That comment was a direct response to Defendant's closing argument which commented upon the State's failure to call at trial several witnesses that Defendant claims might have been helpful to him in this case. The prosecutor was entitled to comment upon Defendant's failure to call witnesses or offer evidence that he claims would have been helpful. The comment was not improper. State v. Simpson,Montgomery App. No. 19797, 2004-Ohio-669 at ¶ 63-65.
 {¶ 36} During the State's rebuttal argument the prosecutor commented on Aisha Whatley's courage in coming forward to testify against Defendant, when her demeanor on the witness stand clearly revealed that she is still afraid of Defendant, ten years after this murder occurred. This comment was a direct response to Defendant's closing argument attacking Whatley's credibility because she did not tell police what she knew in 1994 and waited until 2005 to come forward. Whatley explained that she did not come forward earlier out of fear. The prosecutor's comment merely argued rehabilitation of the witness and was not improper.
 {¶ 37} Finally, during rebuttal the prosecutor commented that witnesses have come forward whose testimony Defendant had suppressed for thirteen years; one, Peterson, by using *Page 15 
friendship and the other one, Whatley, using fear. This comment was based upon the evidence presented. Whatley testified that she did not tell police what she knew because she was afraid. Peterson testified that he did not tell what he knew because Defendant was his friend and he didn't want to tell on his friends. Whether Defendant inspired those reactions was a question for the jury to decide. The prosecutor's remark was a fair comment on the evidence presented, and therefore proper.
 {¶ 38} Even if any of the prosecutor's remarks were improper, and we cannot find that they were, given the strength of the State's case we cannot say that but for the prosecutor's remarks the outcome of this trial would clearly have been different. No plain error is demonstrated.
 {¶ 39} The fourth assignment of error is overruled.
 FIFTH ASSIGNMENT OF ERROR {¶ 40} "TRIAL COUNSEL WAS INEFFECTIVE UNDER THE SIXTH AMENDMENT OF THE CONSTITUTION FOR FAILING TO OBJECT TO THE MISCONDUCT."
 {¶ 41} Defendant complains that his defense counsel performed deficiently at trial by failing to object to the prosecutor's misconduct. Because we have found that the prosecutor's comments during rebuttal closing argument were *Page 16 
not improper, we cannot find defense counsel performed deficiently by failing to object to those comments. Furthermore, given the strength of the State's case, there is no reasonable probability of a different result in this trial even had defense counsel objected to the prosecutor's comments. No Strickland prejudice is demonstrated.
 {¶ 42} The fifth assignment of error is overruled.
 SIXTH ASSIGNMENT OF ERROR {¶ 43} "THE CONVICTION SHOULD BE REVERSED AS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 44} Defendant argues that his conviction is against the manifest weight of the evidence because the three main prosecution witnesses, Peterson, Whatley and Adkins, each had credibility issues, and there were inconsistencies in their testimony regarding the fight that occurred inside the restaurant shortly before Patty Davis was shot outside the restaurant's front entrance.
 {¶ 45} The witnesses' accounts of Davis' shooting were consistent and corroborated by the physical evidence. Moreover, the credibility of the witnesses and the weight to be given to their testimony were matters for the trier of facts, the jury here, to decide. State v. DeHass (1967),10 Ohio St.2d 230. The guilty verdict is not contrary to the *Page 17 
testimony of the State's witnesses, and the jury did not lose its way, simply because the jury chose to believe the State's witnesses. Defendant's conviction is not against the manifest weight of the evidence.
 {¶ 46} The sixth assignment of error is overruled.
 SEVENTH ASSIGNMENT OF ERROR {¶ 47} "BECAUSE OF THE ELEVEN YEAR DELAY BETWEEN THE REPORTING OF THE OFFENSES AND THE INDICTMENT, AND BECAUSE THE DEFENSE WAS PREJUDICED BY THAT DELAY, THE TRIAL COURT DENIED APPELLANT DUE PROCESS OF LAW UNDER THE STATE AND FEDERAL CONSTITUTIONS WHEN IT DENIED THE MOTION TO DISMISS THE INDICTMENT."
 {¶ 48} Defendant argues that the trial court erred in overruling his motion to dismiss the indictment because the eleven year delay between the murder of Patty Davis and his indictment for that crime violated his right to due process, arguing that he suffered actual prejudice as a result of the delay and that the State's reason for the delay is not justifiable.
 {¶ 49} The murder of Patty Davis occurred in 1994. Defendant was not indicted for that crime until 2005. In overruling Defendant's Crim.R. 12(C)(1) motion to dismiss the indictment, the trial court concluded, based upon the evidence *Page 18 
presented at the hearing on the motion, that the State failed to prosecute the case because the only witness who identified Defendant as the shooter had recanted his testimony before his scheduled grand jury appearance, leaving the State with insufficient evidence to prosecute Defendant.
 {¶ 50} Defendant argues that the State could have indicted him four years sooner than it did, in 2001, when it learned from Latonia Adkins that Defendant admitted killing Patty Davis at Frisch's. However, the fact that the State did not indict Defendant until 2005, after Peterson and Whatley came forward and provided information that corroborated Adkins' information, demonstrates that the prosecutor deferred seeking an indictment until the State had sufficient evidence to convict Defendant. That does not violate due process; rather, it comports with it. United States v. Lovasco (1997), 431 U.S. 783; State v. Glasper
(Feb. 21, 1997), Montgomery App. No. 15740. The State's reason for the pre-indictment delay in this case is justifiable and outweighs Defendant's conclusory claim that he suffered actual prejudice.
 {¶ 51} With respect to Defendant's claim that he suffered actual prejudice, Defendant asserts that as a result of the delay he was unable to locate witnesses who could testify that he did not shoot Patty Davis. General assertions by the *Page 19 
defendant that he is unable to locate unidentified hypothetical witnesses do not satisfy his burden to demonstrate that he suffered actual, substantial prejudice. State v. Conley. 24, 2001), Clark App. No. 01CA0013. Accordingly, because Defendant failed to demonstrate that he suffered actual prejudice, and the State's reason for the pre-indictment delay in this case is justifiable, no due process violation is established.
 {¶ 52} The seventh assignment of error is overruled.
 EIGHTH ASSIGNMENT OF ERROR {¶ 53} "EVEN IF THE PREVIOUS ASSIGNMENTS OF ERROR WHEN CONSIDERED INDIVIDUALLY DO NOT MANDATE REVERSAL, THE CUMULATIVE EFFECT OF THOSE ERRORS SHOULD CAUSE THIS COURT TO REVERSE THE CONVICTION."
 {¶ 54} Defendant argues that the cumulative effect of the errors occurring during the trial deprived him of a fair trial. State v.DeMarco (1987), 31 Ohio St.3d 191. Having found no prejudicial error in the trial court's proceedings, however, there can be no "cumulative effect." State v. Blankenship (1995), 102 Ohio App.3d 534.
 {¶ 55} Defendant's eighth assignment of error is overruled. The judgment of the trial court will be affirmed.
 WOLFF, P.J. And FAIN, J., concur. *Page 1