[Cite as *State v. Lenoir*, 2016-Ohio-4981.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | C.A. CASE NO.   26846 |
| | : | |
| v. | : | T.C. NO. 05CR3027 |
| | : | |
| LAMAR LENOIR | : | (Criminal Appeal from |
| | : |  Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

**O P I N I O N**

Rendered on the _____15th_____ day of _____July_____, 2016.

. . . . . . . . . .

KIRSTEN A. BRANDT, Atty. Reg. No. 0070162, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

LAMAR LENOIR, Inmate #425-012, Lebanon Correctional Institute, P. O. Box 56, Lebanon, Ohio 45036
        Defendant-Appellant

. . . . . . . . . . . .

FROELICH, J.

{¶ 1} Lamar Lenoir appeals from a judgment of the Montgomery County Court of Common Pleas, which denied, without a hearing, his motion for leave to file a delayed motion for a new trial. For the following reasons, the trial court's judgment will be

affirmed.

## I. Factual and Procedural History

{¶ 2} In 2007, following a jury trial, Lenoir was convicted of murder with a firearm specification, stemming from the February 13, 1994 shooting of Patty Davis at an area restaurant. The trial court sentenced him to 15 years to life for the murder, plus an additional three-year term on the firearm specification, for an aggregate sentence of 18 years to life in prison.

{¶ 3} In his direct appeal from his conviction, we described the underlying facts, as follows:

In the early morning hours of February 13, 1994, Patty Davis, her husband Chuck Davis, and their friends Larry Stewart and Greta Shafer, went to [a] Frisch's restaurant * * *. Larry Stewart walked past a table occupied by several * * * males, who included Stanley Williams, Kirby Peterson and Defendant, Lamar Lenoir. In walking past the table, Stewart moved a chair that was blocking his path. That offended Williams, who had his feet on the chair. Williams jumped up and threw a punch at Stewart. The two men exchanged blows. Defendant Lenoir joined in the fight. After Larry Stewart was hit in the face with a chair, Chuck Davis came to Stewart's aid. At that point Defendant pulled out a .40 caliber Glock semi-automatic handgun and fired it at Davis. The shot missed Davis but struck Kirby Peterson in the hand.

Panic followed, and people began ducking and running out of the restaurant through emergency exits. Stewart and Shafer crawled into the

kitchen. Williams and Defendant ran out the front door. Patty Davis pursued Defendant Lenoir, yelling at him to stop. As Patty Davis stepped outside, Defendant approached the front of the restaurant with the same handgun he had fired at Chuck Davis. Patty Davis turned to get out of the way, but Defendant opened fire on her. One of the shots struck Davis in the back, severing her spinal cord and piercing her aorta, which caused her death. Defendant Lenoir and Williams quickly fled the scene in Williams' vehicle, leaving Kirby Peterson behind.

Peterson sat at a table inside the restaurant until police arrived. Peterson denied knowing the shooter, and lied to police about who he came to the restaurant with because he did not want to implicate his friends in the shooting. Another person who witnessed this shooting and knew the shooter, Aisha Whatley, also refused to talk when interviewed by police because she was afraid. A few days after this shooting when Stanley Williams was interviewed by the police, he told them that Defendant Lenoir was the shooter. Defendant was subsequently arrested for the murder of Patty Davis. Williams later retracted his statement, however, and failed to testify before the grand jury. As a result, Defendant was released and the case went cold.

More than seven years later, in the fall of 2001, Defendant brutally attacked his girlfriend, Latonia Adkins, threatening to kill her "like he killed the bitch at Frisch's." Adkins told police what Defendant had said. In 2005, police were finally able to obtain the cooperation of witnesses to the

shooting.   Kirby Peterson, who was then in federal prison, said he decided to "do the right thing" by disclosing what he knew.   On March 15, 2005, Peterson told a Montgomery County Sheriff's detective everything that had happened.   Aisha Whatley also came forward and gave police a written statement on July 19, 2005, as well as identifying Defendant from a photospread as the man who shot and killed Patty Davis.

*State v. Lenoir*, 2d Dist. Montgomery No. 22239, 2008-Ohio-1984, ¶ 2-5 ("*Lenoir I*").

{¶ 4} On December 2, 2005, Lenoir was indicted on one count of purposeful murder, in violation of R.C. 2903.02(A), with a firearm specification.   Following a jury trial in March 2007, he was found guilty as charged.

{¶ 5} Prior to sentencing, Lenoir obtained new counsel and filed two motions for a new trial, alleging prosecutorial misconduct (inflammatory statements by the prosecutor during closing arguments), ineffective assistance of counsel, and newly discovered evidence.   The substance of the newly discovered evidence claim was that Latonia Adkins had recanted her testimony.   In a hearing on the motion, Lenoir presented an audio recording of the alleged recantation.   Adkins, however, testified that the individual speaking in the recording was not her, that she had not recanted her testimony, and that the woman speaking in the recording made statements that were factually inaccurate.   On June 20, 2007, the trial court overruled Lenoir's motion for a new trial.

{¶ 6}   The same day, the trial court sentenced Lenoir to an aggregate prison term of 18 years to life.   Lenoir appealed, and we affirmed his conviction on direct appeal. *Lenoir I.*

{¶ 7} Lenoir has challenged his conviction in several post-conviction proceedings.

He filed a petition for post-conviction relief in the trial court in 2007, claiming ineffective assistance of counsel. The trial court denied the petition, and we affirmed the trial court's judgment. *State v. Lenoir*, 2d Dist. Montgomery No. 22893, 2009-Ohio-1275 ("*Lenoir II*").

{¶ 8} In 2011, Lenoir sought a writ of habeas corpus in federal court. One of his arguments in the federal court was that the prosecutor committed misconduct by offering perjured testimony from Peterson, Whatley, and Adkins. With respect to Whatley, he argued that "(1) she did not identify him as the shooter in her original statement to police; (2) her claim is nearly identical to Peterson's -- indicating that they conspired together; (3) disinterested witnesses contradicted her account of events; and (4) she could not have viewed the shooting from where she alleged to have been sitting." *Lenoir v. Warden*, 886 F.Supp.2d 718, 727-728 (S.D.Ohio 2012) ("*Lenoir III*"). The federal court rejected Lenoir's claim as procedurally defaulted. *Id.* at 728-730.

{¶ 9} In 2012, Lenoir sought relief from judgment in the federal court based on "newly discovered evidence" that Peterson had recanted his trial testimony identifying Lenoir as the shooter. In 2013, Lenoir filed in the trial court a motion for leave to file a delayed motion for a new trial, based on the alleged recantation by Peterson. Each of Lenoir's efforts was unsuccessful. We affirmed the trial court's denial of Lenoir's 2013 motion for leave to file a delayed motion for a new trial. *State v. Lenoir*, 2d Dist. Montgomery No. 26080, 2015-Ohio-1045 ("*Lenoir IV*").

{¶ 10} On July 23, 2015, Lenoir filed an additional motion for leave to file a delayed motion for a new trial, pursuant to Crim.R. 33. He claimed that he had newly discovered evidence, consisting of an affidavit by Damon Crawford, a relative of Whatley. Crawford

averred that Whatley had admitted in a June 30, 2015 telephone conversation with him that she had testified falsely at Lenoir's trial about being an eyewitness to the shooting. Whatley also had allegedly told Crawford that "she was well aware she witnessed Williams before the shots and always thought it was him." Lenoir submitted an affidavit, stating that he encountered Crawford in prison on July 4, 2015, and that, at that time, Crawford informed him (Lenoir) of what Whatley had said.

{¶ 11} The trial court, without a hearing, denied Lenoir's motion for leave. After summarizing the facts underlying Lenoir's conviction, Whatley's testimony at the trial, and the standard for ruling on a motion for leave to file a delayed motion for a new trial, the trial court concluded that Lenoir had failed to prove by clear and convincing evidence that he was unavoidably prevented from discovering the evidence within 120 days of the verdict. The court explained:

> * * * Defendant has not even alleged that he was unavoidably prevented from discovering the evidence he seeks to introduce in support of his motion for new trial. Defendant and [Whatley] were from the same neighborhood and had known each other for years. In fact, Lenoir had been stabbed in [Whatley's] yard prior to February 13, 1994. Lenoir was not prevented from investigating the case prior to or after trial; his counsel also cross-examined [Whatley] at trial. Furthermore, the affidavit of Damon Crawford represents nothing more than hearsay. Additionally, the arguments made by Lenoir are simply rearguments of points made at trial and the evidence at trial, none of which amounts to newly discovered evidence, nor an explanation of why Lenoir claims he was unavoidably

prevented from obtaining the evidence.

Lenoir was convicted in March of 2007; he did not file his motion for leave to file a delayed motion for new trial until July 23, 2015, over eight years after his conviction. Nothing in Lenoir's affidavit or the other evidence he presents support any claim that he was unavoidably prevented from discovering the statements allegedly attributable to Aisha Hunter Whatley. While the two affidavits submitted by Defendant suggest he learned of [Whatley's] alleged statements in July, 2015, Defendant has failed to satisfy the second prong of the test for newly discovered evidence, which requires him to establish that he could not have learned of the information in the exercise of reasonable diligence. Importantly, the affidavit of Damon Crawford contains hearsay. The record is devoid of any affidavit from Aisha Hunter Whatley suggesting or implying that she falsely testified nor that she recanted her trial testimony. Although Lenoir is incarcerated, he has not been prevented from contacting the witnesses who testified against him, especially if he believed that they had testified falsely.

{¶ 12} Lenoir appeals from the trial court's ruling, raising two assignments of error, which we will address together.

## II. Denial of Motion for Leave to File Motion for a New Trial

{¶ 13} Lenoir's assignments of error state:

The trial court abused its discretion in summarily denying said motion for leave when supporting affidavits embody prima facie evidence of unavoidable delay which afforded such entitlement to a hearing.

The trial court abused its discretion in holding there was no proof of diligence in as much to unavoidable prevention. When the trial court evidenced clear and convincing proof and prior rulings of the courts hold in accordance to the record that [d]emonstrate Lenoir by no reasonable means could secure such information that would ascertain the facts contained in the affidavit that would give existence to the grounds and should have considered the merits.

{¶ 14} "Crim R. 33(A)(6) permits a convicted defendant to file a motion for a new trial upon grounds that new evidence material to the defense has been discovered that the defendant could not with reasonable diligence have discovered and produced at trial." *State v. Parker*, 178 Ohio App.3d 574, 2008-Ohio-5178, 899 N.E.2d 183, ¶ 15 (2d Dist.); *see* Crim.R. 33(A)(6). A motion based on newly discovered evidence must be filed within 120 days after the day of the verdict, unless the trial court finds by clear and convincing evidence that the defendant was "unavoidably prevented" from discovering the new evidence. Crim.R. 33(B); *State v. Stevens*, 2d Dist. Montgomery Nos. 23236 & 23315, 2010-Ohio-556, ¶ 10.

{¶ 15} A defendant who seeks a new trial after the 120-day time period must first obtain leave from the trial court, demonstrating "by clear and convincing proof" that he or she was unavoidably prevented from timely filing the motion for a new trial or discovering the new evidence upon which he relies. Crim.R. 33(B); *State v. Grissom*, 2d Dist. Montgomery No. 26626, 2016-Ohio-961, ¶ 17. "[A] party is unavoidably prevented from filing a motion for a new trial if the party had no knowledge of the existence of the ground supporting the motion for new trial and could not have learned of the existence of that

ground within the time prescribed for filing the motion for new trial in the exercise of reasonable diligence." *State v. Walden*, 19 Ohio App.3d 141, 146, 483 N.E.2d 859 (10th Dist.1984); *State v. Wilson*, 2d Dist. Montgomery No. 23247, 2009-Ohio-7035, ¶ 8.

{¶ 16} A defendant is entitled to a hearing on his motion for leave if he submits "documents that on their face support his claim that he was unavoidably prevented from timely discovering the evidence" at issue. *State v. York*, 2d Dist. Greene No. 99-CA-54, 2000 WL 192433 (Feb. 18, 2000); *Grissom* at ¶ 18. Although a defendant may file his motion for a new trial along with his request for leave to file such motion, the trial court may not consider the merits of the motion for a new trial until it makes a finding of unavoidable delay. *Stevens* at ¶ 11.

{¶ 17} A trial court's decision on a Crim.R. 33 motion for a new trial will not be reversed absent an abuse of discretion. *State v. Metcalf,* 2d Dist. Montgomery No. 26101, 2015-Ohio-3507, ¶ 4. An abuse of discretion occurs when the decision of a court is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 18} As an initial matter, it is undisputed that Lenoir was required to obtain leave to file a motion for a new trial. Lenoir was convicted in June 2007. He did not file his motion for leave to file a delayed motion for new trial until July 2015, eight years later, which was well beyond the 120-day limit in Crim.R. 33. Thus, Lenoir was required to establish by clear and convincing evidence that he was unavoidably prevented from discovering the new evidence upon which he relies.

{¶ 19} On appeal, Lenoir emphasizes that he did not know Crawford and had no reason to approach him prior to his encounter with Crawford on July 4, 2015. He further

argues that he had no reasonable means, within 120 days of his trial, to prove that Whatley had testified falsely when she identified him as the shooter.

**{¶ 20}** The evidence submitted by Lenoir in support of his motion for leave indicates that he did not learn of Whatley's alleged recantation until July 4, 2015. Crawford stated in his affidavit that he is incarcerated at Lebanon Correctional Institution, where Lenoir is also housed. On June 30, 2015, Crawford spoke with Whatley, his cousin, over the telephone "about life and how I [Crawford] ended up being in prison, and how in my case I was being lied upon." Crawford stated in his affidavit: "My cousin [Whatley] indicated to me her conscious [sic] was bothering her because she had fabricated for the purpose of the State how she witnessed a murder which occurred in 1994, outside a restaurant she was at." He continued: "My cousin clearly indicated by further stating she was never a[n] eyewitness, and [that] the individual she was supposed to have witnessed (which was Lamar Lenoir), was never witnessed by her there to committing a murder." According to Crawford, Whatley also "clearly indicated during the conversation she was well aware she witnessed Williams before the shots and always thought it was him."

**{¶ 21}** Crawford stated in his affidavit that Lenoir stays "in the vicinity of the neighborhood where I live," but that Crawford and Lenoir were not acquaintances and Lenoir never knew that Crawford and Whatley were related. Crawford indicated that, while he (Crawford) was performing his job assignment in the prison, he heard Lenoir's name while Lenoir was "standing on the wall" for disciplinary reasons. Crawford wondered "whether or not he was the person my cousin was talking about or was he a relative." Crawford stated that he later approached Lenoir and informed him of what

Whatley had said over the telephone.

{¶ 22} Consistent with Crawford's affidavit, Lenoir stated in his affidavit that, on July 4, 2015, he was standing on the wall for disciplinary reasons, and officers were speaking to him. Upon leaving that area, he was approached by Crawford, another inmate, who asked whether he was the individual who Whatley "had testified on." Lenoir stated that Crawford explained to him what Whatley had said on June 30, 2015. Lenoir filed his motion to file a delayed motion for a new trial within a month of his conversation with Crawford.

{¶ 23} It is apparent that Lenoir could not have learned of Whatley's statements to Crawford prior to June 30, 2015, because Whatley had not yet made those statements. To that extent, Whatley's alleged June 30 recantation of her testimony to Crawford was new evidence that could not have previously been discovered.

{¶ 24} We note that "[t]here is a material difference between being unaware of certain information and being unavoidably prevented from discovering that information, even in the exercise of due diligence." *State v. Warwick*, 2d Dist. Champaign No. 01 CA 33, 2002-Ohio-3649. We have held that a defendant fails to demonstrate that he or she was unavoidably prevented from discovering new evidence when he would have discovered that information earlier had he or she exercised due diligence and some effort. *State v. Metcalf*, 2d Dist. Montgomery No. 26101, 2015-Ohio-3507, ¶ 11, citing *Warwick*.

{¶ 25} The State asserts that Lenoir was aware of the "ground" for his motion for a new trial, namely that Whatley fabricated her testimony at trial, and that Lenoir has made that exact argument on prior occasions, such as in federal court. The State further argues that, even assuming that Lenoir was not aware of this ground before July 2015,

he should have been aware of it and could have obtained the same information as Crawford provided if he had diligently pursued or investigated the belief that Whatley's testimony was perjured.

{¶ 26} We find the circumstances before us to be similar to those in *Lenoir IV*, in which we affirmed the trial court's denial of Lenoir's 2013 motion for leave to file a delayed motion for a new trial. In that motion, Lenoir claimed that he possessed newly discovered evidence that Peterson had recanted his testimony identifying Lenoir as the shooter. The alleged new evidence consisted of an audio recording of a telephone conversation between Lenoir's sister, Jamisla Meaux, and Peterson, during which Meax suggested to Peterson that "the prosecutor told [Peterson] what to say * * * when he was up there on the witness stand." Peterson had responded, "Oh yeah, they did" and "[T]hey was [sic] like showing me old pictures of what happened." In response to the motion, the State submitted affidavits from the case detective, the assistant prosecutors who tried the case, and Peterson. In his affidavit, Peterson denied that prosecutors had told him what to say, and he indicated that his testimony at trial was "truthful and accurate." Peterson explained his oral responses to Meaux during their telephone conversation, indicating that he was trying not to look bad to Lenoir and his sister and that he was trying to "save face."

{¶ 27} On appeal from the trial court's denial of his 2013 motion, Lenoir argued that he was entitled to a hearing because "he could not have discovered evidence of the phone conversation between Peterson and Meaux before the 120-day time limit since it did not take place until April 11, 2012." *Lenoir IV*, 2d Dist. Montgomery No. 26080, 2015-Ohio-1045, ¶ 19. We rejected Lenoir's argument, reasoning:

* * * Upon review, however, nothing in either Lenoir's or Meaux's affidavit supports his claim that he was unavoidably prevented from discovering the statements obtained from Peterson during the conversation with his sister. The siblings' affidavits merely state that the conversation took place on April 12, 2012. Viewed in a light most favorable to Lenoir, the date of the conversation only indicates that he did not become aware of the information until April 12, 2012. We agree with the trial court that the affidavits do not satisfy the second prong of the test for newly discovered evidence, namely that which requires the petitioner to establish that he could not have learned of the information in the exercise of reasonable diligence.

* * *

We also note that the record establishes that Lenoir and Peterson were close friends for many years who spent time together every day. If Lenoir believed that Peterson had given false testimony, he could have promptly contacted Peterson and made the appropriate inquiries at any time after his trial. Significantly, the record establishes that Lenoir's trial counsel vigorously cross-examined Peterson regarding his location when the shooting occurred and whether he was in a position to observe who actually shot Davis. Although, Lenoir is incarcerated, he has not been prevented from contacting the witnesses who testified against him, especially if he believed they had testified falsely. Accordingly, we find that Lenoir has failed to establish by clear and convincing evidence that he was unavoidably prevented from the discovery of the telephone conversation between

Peterson and Meaux.

*Lenoir IV* at ¶ 19, ¶ 22.

{¶ 28} Here, as with Peterson, Lenoir believed for several years that Whatley had fabricated her testimony. Although neither Whatley nor Crawford was friendly with Lenoir, Whatley was familiar with Lenoir prior to the shooting in 1994; Whatley testified at trial that Lenoir had been stabbed in the yard of her home years before the 1994 shooting, and that she did not want to identify Lenoir in 1994 because she was afraid. There was no allegation in Lenoir's affidavit that he did not know of Whatley's whereabouts after the trial. And, Lenoir did not indicate whether he had attempted to contact Whatley -- either directly, through counsel, or through a mutual acquaintance – regarding her trial testimony. Whatley did not provide an affidavit, supporting Crawford's claim that she recanted her trial testimony, and even though Lenoir has been incarcerated, Lenoir has not provided an explanation why he could not have learned of Whatley's alleged recantation earlier. The trial court did not abuse its discretion when it determined that Lenoir failed to offer documentation that, on its face, clearly and convincingly shows that he was unavoidably prevented from timely discovering this "new evidence."

{¶ 29} Lenoir's assignments of error are overruled.

### III. Conclusion

{¶ 30} The trial court's judgment will be affirmed.

. . . . . . . . . . . . .

HALL, J. and WELBAUM, J., concur.

Copies mailed to:

Kirsten A. Brandt
Lamar Lenoir

Hon. Mary Katherine Huffman