OPINION
{¶ 1} Defendant, Joshua Wilson, appeals from his conviction andsentence for murder and felonious assault.
 {¶ 2} On October 8, 2006, D'Laquan Phillips and his uncle, MichaelPhillips, were walking Michael's dog on West Third Street in Dayton,when two men, one dressed in all black and *Page 2 wearing a hooded sweatshirt and the other one wearing lighter coloredclothing, confronted them. The two men accused D'Laquan Phillips of atrespassing offense. D'Laquan Phillips insisted they had the wrong man.An argument then ensued.
 {¶ 3} D'Laquan Phillips dropped his dog's leash when confronted by thetwo men and Michael Phillips overhead the argument between D'LaquanPhillips and the two men while he was untangling the dog from a bushinto which it had run. Michael Phillips heard a gunshot and saw D'LaquanPhillips struggling with the man dressed in black, later identified asDefendant, Joshua Wilson.
 {¶ 4} D'Laquan Phillips attempted to flee from Defendant but Defendantshot D'Laquan Phillips in the back. Michael Phillips watched as D'LaquanPhillips, while lying on the ground, reached out and grabbed Defendant'spants leg. Defendant responded by shooting D'Laquan Phillips in thehead. Michael Phillips ran to a neighborhood store and called police.D'Laquan Phillips died at the scene.
 {¶ 5} Detective Doyle Burke of the Dayton police department assembleda photospread that included Defendant's picture. Four days after thisshooting occurred, Michael Phillips identified Defendant from thatphotospread as the man who shot and killed D'Laquan Phillips. Threeother witnesses, *Page 3 Michael Huff, Jacqueline James and John Bridges, either heard and/or sawthe shooting, although they could not identify the shooter.
 {¶ 6} D'Laquan Phillips was shot eight times, once in the thigh, oncein the hand, twice in the back, and four times in the head. All of thebullets and shell casings recovered from the victim's body or at thescene were fired from the same gun, which police found in an alley nearthe crime scene. Five days after this shooting, police arrestedDefendant, who still wore a black hooded sweatshirt and had blood on hisright shoe.
 {¶ 7} Defendant was indicted on one count of purposeful murder,R.C. 2903.02(A), one count of felony murder, R.C. 2903.02(B), one count offelonious assault involving serious physical harm, R.C. 2903.11(A)(1),and one count of felonious assault involving a deadly weapon,R.C. 2903.11(A)(2). A firearm specification, R.C. 2941.145, was attached toeach of the charges. Following a jury trial, Defendant was found guiltyof all charges and specifications. At sentencing, the trial court mergedthe two murder charges and imposed one fifteen year to life sentence.The court also sentenced Defendant to eight years on each count offelonious assault, and ordered all of the sentences to be servedconsecutively. *Page 4 Finally, the court merged the firearm specifications and imposed oneadditional and consecutive three year prison term, for a total aggregatesentence of thirty four years to life.
 {¶ 8} Defendant timely appealed to this court from his conviction andsentence.
 FIRST ASSIGNMENT OF ERROR
 {¶ 9} "THE TRIAL COURT ERRED IN REFUSING TO ADMIT TESTIMONY OF TWOWITNESSES REGARDING MICHAEL PHILLIPS' ACCUSATION OF SOMEONE OTHER THANTHE DEFENDANT FOR SHOOTING HIS NEPHEW."
 {¶ 10} Three State's witnesses, Michael Phillips, Jacqueline James andJohn Bridges, testified at trial that there were two men involved in themurder of D'Laquan Phillips. Michael Phillips identified Defendant,Joshua Wilson, as the man dressed in black who was the shooter. Theother perpetrator was never identified. At trial, Defendant wanted tointroduce evidence that would impeach Michael Phillips' credibility andsuggest that his identification of Defendant as the shooter wasmistaken. Specifically, Defendant proffered that a witness named Robert"Bobby" Matson, Sr., would testify that on the same day Michael Phillipsidentified Defendant from a photospread as the man who shot and killedD'Laquan Phillips, Michael Phillips also *Page 5 
 (1) pulled a gun on Matson and his companion, Clarence "Clay"
 Williams, (2) accused Williams of killing D'Laquan Phillips, (3)demanded money from both Matson and Williams, and (4) struck apedestrian with his vehicle as he fled the scene. Michael Phillips wassubsequently arrested and convicted as a result of this conduct, but hisconviction was for possession of heroin police found on his person.
 {¶ 11} The State opposed this proposed testimony by Matson by way of amotion in limine, arguing that it was not relevant and was a collateralattack on Michael Phillips' character. Defendant argued that thetestimony was directly relevant to Michael Phillips' credibility and theaccuracy of his earlier identification of Defendant as the killer.
 {¶ 12} The trial court refused to allow the proposed testimony byMatson, concluding that while it may possess some relevance, itsprobative value is substantially outweighed by the danger of unfairprejudice and confusion of the issues because it contains too muchcollateral matter relating to Michael Phillips' bad character. The trialcourt did permit Defendant to impeach Michael Phillips with his felonyconviction(s), so long as the circumstances surrounding them were notbrought up.
 {¶ 13} At the outset, we note that the State concedes in *Page 6 its brief that the issue concerning the exclusion of Matson's testimonywas properly preserved for appellate review by the proffer Defendantmade during the hearing on the admissibility of that evidence,Evid. R. 103, and by the nature of the State's motion in limine seeking toexclude the testimony of a party's witness, which is the equivalent of amotion to suppress. See: Huffman v. Hair Surgeon, Inc. (1985),19 Ohio St.3d 83, 86, n. 5.
 {¶ 14} The admission or exclusion of evidence is a matter restingwithin the sound discretion of the trial court, and its decision in suchmatters will not be disturbed on appeal absent an abuse of thatdiscretion. State v. Davis, 116 Ohio St.3d 404, 2008-Ohio-2, at ¶ 172.An abuse of discretion means more than a mere error of law or an errorin judgment. It implies an arbitrary, unreasonable, unconscionableattitude on the part of the court. State v. Adams (1980),62 Ohio St.2d 151.
 {¶ 15} Defendant argues that the trial court abused its discretion innot allowing the testimony by Matson, because it was directly relevantto Michael Phillips' credibility and his identification of Defendant asthe shooter. Defendant points out that the only evidence linking him tothis murder and identifying him as the shooter was the eyewitnesstestimony of *Page 7 Michael Phillips. Defendant argues that Michael Phillips' conduct inaccusing other men, Williams and/or Matson, of killing D'LaquanPhillips, only hours after Michael Phillips had identified Defendantfrom a photospread as the man who shot and killed D'Laquan Phillips,casts doubt upon Michael Phillips' credibility and his earlieridentification of Defendant as the killer.
 {¶ 16} We agree that Michael Phillips' testimony identifying Defendantas the shooter was critical to his conviction, and that the evidence thecourt excluded, Matson's testimony that Michael Phillips had accusedMatson of being the shooter, could have undermined the credibility ofMichael Phillips concerning his identification of Defendant. However, wecannot find that the trial court abused its discretion in excluding thatevidence.
 {¶ 17} Evid. R. 613(B) provides that a prior inconsistent statement ofa witness is admissible if (1) the witness is given a prior opportunityto admit or deny the statement, and (2) the subject matter of thestatement involves "[a] fact that may be shown by extrinsic evidenceunder the common law rule of impeachment if not in conflict with theRules of Evidence." Evid. R. 613(B)(2)(c).
 {¶ 18} Defendant did not seek to inquire of Michael *Page 8 Phillips on cross examination whether he had accused Matson of
 being the man who shot and killed his nephew. Nevertheless, as theissue is presented, the question is whether Matson's proposed testimony,even had that prior inquiry been made, was admissible as extrinsicevidence.
 {¶ 19} Evid. R. 616(C) provides:
 {¶ 20} "Specific contradiction[.] Facts contradicting a witness'stestimony may be shown for the purpose of impeaching the witness'stestimony. If offered for the sole purpose of impeaching a witness'stestimony, extrinsic evidence of contradiction is inadmissible unlessthe evidence is one of the following:
 {¶ 21} "(1) Permitted by Evid. R. 608(A), 609, 613, 616(A), 616(B), or706;
 {¶ 22} "(2) Permitted by the common law of impeachment and not inconflict with the Rules of Evidence."
 {¶ 23} The common law permits introduction of extrinsic evidence wheresuch evidence is critical to determining the credibility of a witness'sstory. Weissenberger, Ohio Evidence Treatise (2007 Ed.), _ 616.7. BothEvid. R. 613(B)(2)(c) and 616(C) permit its introduction, but only whenthe evidence is "not in conflict with the Rules of Evidence."Weissenberger writes: "this limitation is designed to ensure *Page 9 that this provision is not used to circumvent the prohibition on the useof extrinsic evidence of specific acts found in Rule 608(B)." Id.at 415.
 {¶ 24} Evid. R. 608(B) states, in pertinent part:
 {¶ 25} "Specific instances of conduct[.] Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness, other than conviction of crime as provided in Evid. R. 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if clearly probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness's character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified."
 {¶ 26} Matson's proposed testimony was extrinsic evidence thatDefendant would offer for the purpose of attacking Michael Phillips'character for untruthfulness. It was inadmissible pursuant toEvid. R. 608(B), and therefore the common law rule exception inEvid. R. 613(B)(2)(c) and 613(B) cannot apply. *Page 10 
 {¶ 27} Under the "collateral matter doctrine", a party may not presentextrinsic evidence to contradict a witness on a collateral matter.Byomin v. Alvis (1959), 169 Ohio St. 395. The statement Michael Phillipsallegedly made to Matson, though relevant to the shooting of D'LaquanPhillips, was a matter collateral to that shooting. Therefore, evenhad Defendant inquired of Michael Phillips whether he had accusedMatson of being the shooter, and had Phillips denied that heaccused Matson, Defendant could not disprove the truth of Phillips'answer by introducing extrinsic evidence in the form of Matson'stestimony. State v. Levin (1984), 11 Ohio St.3d 171.
 {¶ 28} Defendant's first assignment of error is overruled.
 SECOND ASSIGNMENT OF ERROR
 {¶ 29} "THE TRIAL COURT ERRED IN NOT MERGING THE FELONIOUS ASSAULTCOUNT WITH THE PURPOSEFUL MURDER CHARGE."
 {¶ 30} Defendant argues that the trial court erred in failing to mergethe purposeful murder charge, R.C. 2903.02(A), and the felonious assaultcharge based upon causing serious physical harm, R.C. 2903.11(A)(1),because they are allied offenses of similar import underR.C. 2941.25.
 {¶ 31} R.C. 2941.25 provides:
 {¶ 32} "(A) Where the same conduct by defendant can be *Page 11 construed to constitute two or more allied offenses of similar import,the indictment or information may contain counts for all such offenses,but the defendant may be convicted of only one.
 {¶ 33} "(B) Where the defendant's conduct constitutes two or moreoffenses of dissimilar import pursuant to R.C. 2941.25(B), or where hisconduct results in two or more offenses of the same or similar kindcommitted separately or with a separate animus as to each, theindictment or information may contain counts for all such offenses, andthe defendant may be convicted of all of them."
 {¶ 34} In determining whether two or more offenses constitute alliedoffenses of similar import pursuant to R.C. 2941.25(A), a two step testis employed. In the first step, the statutorily defined elements of thecrimes are compared in the abstract, without reference to the facts ofthe case or Defendant's conduct constituting the offense. State v.Rance, 85 Ohio St.3d 632, 1999-Ohio-291. If the elements of the offensescorrespond to such a degree that the commission of one crime will resultin the commission of the other, the crimes are allied offenses ofsimilar import and the court must then proceed to the second step.Id. If, however, the elements do not so correspond, the offenses are ofdissimilar *Page 12 import and the court's inquiry ends-the multiple convictions arepermitted. Id.
 {¶ 35} In the second step, the defendant's particular conduct isreviewed to determine whether the defendant can be convicted of bothcrimes. If the court finds either that the crimes were committedseparately or that there was a separate animus for each crime, thedefendant may be convicted of both offenses. State v. Rance, supra.
 {¶ 36} In State v. Cabrales, 118 Ohio St.3d 54, 2 008-Ohio-1625, theOhio Supreme Court recently stated:
 {¶ 37} "1. In determining whether offenses are allied offenses ofsimilar import under R.C. 2941.25(A), courts are required to compare theelements of offenses in the abstract without considering the evidence inthe case, but are not required to find an exact alignment of theelements. Instead, if, in comparing the elements of the offenses in theabstract, the offenses are so similar that the commission of one offensewill necessarily result in commission of the other, then the offensesare allied offenses of similar import. (State v. Rance (1999),85 Ohio St.3d 632, 710 N.E.2d 699, clarified.)" Syllabus.
 {¶ 38} Defendant was found guilty of purposeful murder in violation ofR.C. 2903.02(A), and felonious assault based upon *Page 13 causing serious physical harm in violation of R.C. 2911.01(A)(1). Thosetwo statutes provide respectively:
 {¶ 39} "(A) No person shall purposely cause the death of another orthe unlawful termination of another's pregnancy.
 {¶ 40} "(A) No person shall knowingly do either of the following:
 {¶ 41} "(1) Cause serious physical harm to another or to another'sunborn."
 {¶ 42} In comparing the elements of these two offenses in the abstractwithout considering the evidence in this case, it is apparent thatpurposely causing the death of someone necessarily causes seriousphysical harm to that person. The offenses are so similar that thecommission of one offense, purposeful murder in violation ofR.C. 2903.02(A), necessarily results in commission of the other offense,felonious assault based upon causing serious physical harm in violationof R.C. 2903.11(A)(1). Accordingly, the two offenses are allied offensesof similar import, Cabrales and we therefore must examine Defendant's conduct to determine whether these crimes were committed separately or with a separate animus as to each. State v. Blankenship
(1988), 38 Ohio St.3d 116; R.C. 2941.25(B).
 {¶ 43} The evidence in this case demonstrates that *Page 14 Defendant committed two separate and distinct felonious assaults againstD'Laquan Phillips, and then murdered him. The initial felonious assaultoccurred when Michael Phillips heard a gunshot and looked up to see hisnephew, D'Laquan Phillips, struggling with Defendant. Although it isunclear from the record whether this first shot struck D'LaquanPhillips, this conduct corresponds to count four of the indictment whichcharged that Defendant caused or attempted to cause physical harm with adeadly weapon. This first felonious assault was completed beforeDefendant committed the second felonious assault, which occurred whenDefendant shot D'Laquan Phillips in the back as Phillips attempted toflee. This shot struck Phillips and incapacitated him. The coronertestified that after being shot in the back, D'Laquan Phillips wasparalyzed from the chest down. This conduct corresponds to count threewhich charged that Defendant caused serious physical harm. This secondfelonious assault was completed before Defendant stood over D'LaquanPhillips and shot him multiple times in the head, purposely causing hisdeath.
 {¶ 44} Under these circumstances, we conclude that the feloniousassaults were committed separately from and prior to the purposefulmurder, and therefore Defendant may be convicted and sentenced for allof those offenses. *Page 15 
 {¶ 45} Defendant's second assignment of error is overruled.
 THIRD ASSIGNMENT OF ERROR
 {¶ 46} "THE DEFENDANT'S RIGHT TO COUNSELUNDER THE SIXTH AMENDMENT OF THE CONSTITUTION, AS INCORPORATED TO THESTATES VIA THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT, WASVIOLATED BY INEFFECTIVE ASSISTANCE OF COUNSEL."
 {¶ 47} This assignment of error, which has apparently been included inDefendant's brief at his insistence, raises the claim that Defendant'strial counsel performed deficiently because he failed to call defensewitnesses who allegedly would have testified that the gunman who shotD'Laquan Phillips was wearing a mask. That testimony would contradictthe eyewitness testimony of Michael Phillips that he looked the gunmandead in his face, which is why he was able to identify him.
 {¶ 48} First, we note that our attention has not been directed to anyplace in this record where Defendant proffered the substance of what thedefense witnesses, had they been called, would have testified to attrial. All we know in that regard is what Defendant himself "argues" inhis appellate brief that the witnesses would have said if called totestify. Absent a proffer, the substance of the witnesses' proposedtestimony is a matter of sheer speculation, and in that event *Page 16 the record does not demonstrate that defense counsel performeddeficiently by failing to call those witnesses to testify at trial.Without a showing of deficient performance, ineffective assistance ofcounsel is not demonstrated. Strickland v. Washington (1984),466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; State v. Bradley (1989),42 Ohio St.3d 136.
 {¶ 49} Additionally, we note that Defendant's appellate counsel statesin his brief that "he has thoroughly reviewed the record and finds thereis no merit to this Assignment of Error." Defendant's appellate counselfurther states that he "finds this Assignment of Error to be whollyfrivolous." Under these circumstances, there is no claimed error forthis court to rule upon. This assignment of error appears to be nothingmore than a pro se claim presented by Defendant. As is our policy, wedecline to review pro se claims where, as here, Defendant is representedby counsel.
 {¶ 50} Defendant's third assignment of error is overruled. Thejudgment of the trial court will be affirmed.
 BROGAN, J. And DONOVAN, J., concur. *Page 1