[Cite as *State v. Morris*, 2017-Ohio-1196.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| *Plaintiff-Appellee* | : | Appellate Case Nos. 26949 and 26960 |
| | : | |
| v. | : | Trial Court Case No. 2009-CR-2159/1 |
| | : | |
| D'ALCAPONE A. MORRIS | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| *Defendant-Appellant* | : | |
| | : | |

. . . . . . . . . .

O P I N I O N

Rendered on the 31st day of March, 2017.

. . . . . . . . . .

MATHIAS H. HECK, JR., by ANDREW T. FRENCH, Atty. Reg. No. 0069384, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellee

BRYAN K. PENICK, Atty. Reg. No. 0071489, MATTHEW G. BRUCE, Atty. Reg. No. 0083769, 1900 Kettering Tower, 40 North Main Street, Dayton, Ohio 45423
      Attorneys for Defendant-Appellant

. . . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Defendant-Appellant, D'Alcapone Morris, appeals from two trial court decisions. In Case No. 26949, Morris appeals from a decision overruling his motion for new trial, and in Case No. 26960, he appeals from a decision overruling his motion for production of documents. Because the cases involve the same underlying criminal convictions, we have consolidated the appeals.

{¶ 2} After reviewing the record, we conclude that the trial court did not err in overruling both motions. Accordingly, the judgments of the trial court will be affirmed.

## I. Facts and Course of Proceedings

{¶ 3} In April 2010, Morris was convicted of several charges, including murder, aggravated robbery, aggravated burglary, and a firearm specification, and was sentenced to a total of 35 years to life in prison. We affirmed the convictions and sentences on January 6, 2012. *See State v. Morris*, 2d Dist. Montgomery No. 24034, 2012-Ohio-22. Morris did not appeal further to the Supreme Court of Ohio.

{¶ 4} The charges against Morris arose from events that occurred on the evening of June 2 and into the early morning hours of June 3, 2009, when an individual named Richard Pogue was murdered at a residence on Kingsley Avenue in Dayton, Ohio. According to our opinion:

The State's evidence at trial established that on June 3, 2009, Morris and a

companion, Michael Guy, arranged to have a female, Nichelle White, drive

them to purchase marijuana from an individual named Richard Pogue. Upon

arriving at Pogue's residence, they discovered that he did not have the

marijuana. Pogue agreed, however, to accompany them to the home of Javon Buckman, who had marijuana available. White drove the three men to Buckman's house on Kingsley Avenue. Once there, Buckman would allow only two of them to enter. As a result, Pogue and Guy went inside while Morris stayed outside.

Inside the house, Buckman handed Guy some marijuana. Instead of paying, Guy pulled out a revolver he earlier had obtained from Morris and ordered Buckman and Pogue to the floor. As that was happening, Morris entered through the side door, punched Buckman and Pogue in their faces, took the revolver from Guy, and declared that Buckman and Pogue were about to die. With Guy standing in front of him and Morris standing behind him, Buckman heard Morris cock the revolver and fire a single shot. Guy and Morris then rifled through Buckman's pockets before fleeing the scene in White's waiting car. Pogue died as a result of a point-blank gunshot wound to his back. During their investigation, police identified Guy and Morris as suspects. They first located Guy, who led them to White. They later found Morris hiding under insulation in the attic of his girlfriend's house.

Morris testified at trial and admitted being at Buckman's house with Guy and Pogue on the night in question. He admitted bringing a revolver with him but denied knowing about a robbery. According to Morris, he entered the house after hearing or seeing commotion inside and saw Guy brandishing the gun. He testified that he was attempting to get the gun from Guy when it "went off."

(Footnote omitted.)   *Morris* at ¶ 2-4.

{¶ 5} As was noted, Morris was convicted of all charges in April 2010, and his convictions were affirmed in January 2012.   On September 10, 2015, Morris filed a motion for leave to file a delayed motion for new trial.   In the motion, Morris asserted that Joshua Davis, another inmate at Ross Correctional Institution, had overheard him discussing his case in August 2015.   Davis (who was previously unknown to Morris) indicated that on the night of the murder, he was going to Buckman's house to buy marijuana.   While Davis was walking toward the house, he heard a gunshot and saw two African-American males running out of the door.   As Davis was leaving, he heard another shot and saw another African-American male stumbling out the other door of the house, at which point Davis stated that "he got his ass out of there."   Case No. 26949, Doc. #14, p. 2.   According to Morris, Davis was willing to sign an affidavit.   However, no affidavit was attached to the motion.   Morris also did not attach his own affidavit, nor did he attach any other documents.

{¶ 6} Based on this alleged evidence, Morris argued that if another shot occurred after he left the house, reasonable doubt about his guilt existed and would warrant a new trial.   In a supplemental pleading filed on October 6, 2015, Morris also alleged that Pogue was shot in the chest, that more than one shot was fired, that the coroner's report had been changed, and that more than one bullet was submitted for testing.   The State did not file responses to Morris's motion or his supplemental pleading.

{¶ 7} On November 12, 2015, the trial court overruled the motion for leave to file a motion for new trial.   The court concluded that Morris had not been unavoidably prevented from discovering the evidence, and that he had made nothing more than a

mere allegation.    Morris appealed from this judgment on December 10, 2015.

{¶ 8} Shortly after the court's decision on the new trial motion, Morris filed a motion requesting production of the trial transcripts.    This particular motion was filed on November 30, 2015, and was overruled by the trial court on December 4, 2015.   Morris timely appealed from this decision on December 21, 2015.

II.   Motion for Leave to File a Motion for New Trial

{¶ 9} Morris's First Assignment of Error states that:

The Trial Court Abused Its Discretion in Denying Appellant Leave to
File a Motion for New Trial.

{¶ 10} After these appeals were filed, we appointed counsel for Morris, and his counsel has filed both a brief and a reply brief.   Under the First Assignment of Error, Morris contends that the trial court abused its discretion in overruling the motion for leave to file a motion for new trial.   Morris first argues that testimony about someone firing a shot after he left Buckman's house is obviously material to his defense and creates a strong probability that the result of his prior trial would change if a new trial were granted. Morris also argues that he could not have possibly learned of this evidence prior to trial or even until August 2015, when he was approached by Davis.   Specifically, Morris did not know Davis and was not aware that he was present the evening of the shooting.

{¶ 11} Crim.R. 33(A)(6) allows motions for new trial to be filed "[w]hen new evidence material to the defense is discovered which the defendant could not with reasonable diligence have discovered and produced at the trial."   Crim.R. 33(B) further provides that:

Motions for new trial on account of newly discovered evidence shall be filed within one hundred twenty days after the day upon which the verdict was rendered, or the decision of the court where trial by jury has been waived. If it is made to appear by clear and convincing proof that the defendant was unavoidably prevented from the discovery of the evidence upon which he must rely, such motion shall be filed within seven days from an order of the court finding that he was unavoidably prevented from discovering the evidence within the one hundred twenty day period.

{¶ 12} "[A] party is unavoidably prevented from filing a motion for new trial if the party had no knowledge of the existence of the ground supporting the motion for new trial and could not have learned of the existence of that ground within the time prescribed for filing the motion for new trial in the exercise of reasonable diligence." *State v. Walden*, 19 Ohio App.3d 141, 145-146, 483 N.E.2d 859 (10th Dist.1984).

{¶ 13} "Evidence which merely impeaches or contradicts evidence in the former trial is insufficient to support a motion for a new trial." (Citations omitted.) *State v. Wright*, 67 Ohio App.3d 827, 831, 588 N.E.2d 930 (2d Dist.1990). " 'The test is whether the newly discovered evidence would create a strong probability of a different result at trial, or whether it is merely impeaching or contradicting evidence that is insufficient to create a strong probability of a different result.' " *Id.*, quoting *Dayton v. Martin*, 43 Ohio App.3d 87, 90, 539 N.E.2d 646 (2d Dist.1987).

{¶ 14} "A motion for new trial pursuant to Crim.R. 33(B) is addressed to the sound discretion of the trial court, and will not be disturbed on appeal absent an abuse of discretion." *State v. Schiebel*, 55 Ohio St.3d 71, 564 N.E.2d 54 (1990), paragraph one

of the syllabus.   An abuse of discretion " 'implies that the court's attitude is unreasonable, arbitrary or unconscionable.' "   (Citations omitted.)   *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).   "[M]ost instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary."   *AAAA Enterprises, Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).   "A decision is unreasonable if there is no sound reasoning process that would support that decision." *Id.*

{¶ 15} The trial court based its decision on the fact that Morris failed to attach his own affidavit or the affidavit of a witness to his motion, and had also presented only a "bald assertion that he was unavoidably prevented from learning of the witness or the alleged evidence."   Case No. 26949, Doc. #18, p.6.   Our review of the record indicates that the court's decision is supported by a sound reasoning process and was not an abuse of discretion.

{¶ 16} "Criminal Rule 47 and Criminal Rule 33 establish that it is the defendant's burden to show by clear and convincing proof that he was unavoidably prevented from discovering the new evidence within the 120-day time period.   The rule is silent as to the evidentiary material which the defendant must submit to meet his burden of proof but clearly more than mere allegation of unavoidable prevention is required."   *State v. Kiraly*, 56 Ohio App.2d 37, 55, 381 N.E.2d 649 (8th Dist.1977) (Krenzler, J., concurring in judgment only).   *Accord State v. Smith*, 2d Dist. Montgomery Nos. 21463, 22334, 2008-Ohio-6330, ¶ 59; *State v. Waddy*, 2016-Ohio-4911, 68 N.E.3d 381, ¶ 19 (10th Dist.).

{¶ 17} As was noted, Morris submitted nothing other than his motion, which

contained only mere allegations.[1]    Accordingly, we cannot find that the trial court abused its discretion in rejecting Morris's motion for leave to file a delayed motion for new trial.

{¶ 18} In support of his assignment of error, Morris cites *State v. Trimble*, 11th Dist. Portage No. 2015-P-0038, 2016-Ohio-1307, in which the court stated that affidavits are not required to support motions for leave to file a motion for new trial.    *Id.* at ¶ 11, citing *State v. Trimble*, 11th Dist. Portage No. 2013-P-0088, 2015-Ohio-942, ¶ 18.    Admittedly, Crim.R. 33(A)(6) and (B) do not specifically state that affidavits are mandated when a defendant files a motion for leave to file a motion for new trial.    Instead, Crim.R. 33(C) requires affidavits only in connection with motions based on Crim.R. 33(A)(2) and (3). Crim.R. 33(A)(6) also states that defendants must produce affidavits at the hearing on the motion, meaning that affidavits are not necessarily required before a hearing.

{¶ 19} On the other hand, Crim.R. 33(B) states, regarding motions for new trial based on newly discovered evidence, that it must "appear by clear and convincing proof that the defendant was unavoidably prevented from the discovery of the evidence upon which he must rely * * *."    The reference to "clear and convincing *proof*" means something more than bare allegations or statements in a motion.    For example, in the original decision in *Trimble*, the defendant attached two emails and a response to a public records request to his motion.    *Trimble*, 11th Dist. Portage No. 2013-P-0088, 2015-Ohio-942, at

---

[1] During the course of these consolidated appeals, Morris did file a motion to correct or modify the appellate record with an affidavit that he claimed to have mailed to the trial court on September 15, 2015.   In an affidavit filed with our court, Morris stated that he only learned of the trial court's failure to consider the affidavit when he read his attorney's appellate brief.   We rejected the request, however, noting that if material is not filed with the trial court, we cannot add it to the record and consider it.   *State v. Morris*, 2d Dist. Montgomery Nos. 26949 and 26960, ¶ 3-6 (Sept. 29, 2016).   As a result, we have not considered the content of the affidavit (which was from the alleged witness, Davis) in deciding Morris's appeals.

¶ 5-6. In contrast, Morris submitted no documents to his motion; instead, he made only allegations. As a result, the trial court properly concluded that Morris did not provide clear and convincing proof to support his claim.

{¶ 20} Based on the preceding discussion, the First Assignment of Error is overruled.


III. Motion for Production of Transcripts

{¶ 21} Morris's Second Assignment of Error states that:

The Trial Court Erred When It Overruled Appellant's Motion for Production of Transcripts by Indigent Defendant.

{¶ 22} Under this assignment of error, Morris contends that the trial court should have granted his request for a copy of his transcripts and discovery documents pertinent to the trial, because he is indigent and there are no alternative functions that would fulfill the same functions as a transcript.

{¶ 23} In responding, the State makes several points, including that: there is no right to discovery in post-conviction proceedings; defendants are not entitled to transcripts where one has been filed in their direct appeal; and indigent defendants are entitled to transcripts only if a post-conviction action is pending when the transcript is sought. The State, therefore, argues that the trial court appropriately denied Morris's request pursuant to R.C. 149.43(B)(8). The State concedes that the trial court incorrectly referenced R.C. 149.43(B)(4) rather than R.C. 149.43(B)(8), but contends the court, nonetheless, applied the correct standard in rejecting Morris's claim.

{¶ 24} As a preliminary matter, "[t]he Supreme Court of Ohio has repeatedly

adhered to the position that defendants are not entitled to a transcript where the transcript has already been filed in their direct appeal, and that only one copy of the transcript of criminal trials must be provided to indigent criminal defendants." *State v. Taylor*, 2d Dist. Montgomery No. 26327, 2016-Ohio-1100, ¶ 16, citing *State ex rel. Call v. Zimmers*, 85 Ohio St.3d 367, 368, 708 N.E.2d 711 (1999). (Other citations omitted.) Applying this standard, a copy of the trial transcript was filed during Morris's direct appeal, and the court, therefore, was not required to provide another copy.

**{¶ 25}** As a further matter, Morris's motion for production was not specifically filed pursuant to R.C. 149.43; instead, his motion was filed simply as a request for "Production of Transcripts by Indigent Defendant." Case No. 26949, Doc. #20, p.1. In that motion, Morris asked "to be provided with either a photocopy of the transcripts of his trial, or plea, and all pretrial hearings, sentencing, and documents, or loaned all transcripts and documents, or a CD-ROM duplicate to be provided, which is necessary for the Defendant to proceed in all post-appeal statutory or regulatory proceedings created by Ohio law." *Id.*

**{¶ 26}** The only ground Morris stated in the memorandum accompanying the motion was that he was indigent and could not appear in person at the courthouse to request the documents. As was noted, the trial court treated this as a public records request under R.C. 149.43(B)(4), and rejected it because Morris failed to establish that the information was necessary to support a justiciable claim.

**{¶ 27}** R.C. 149.43(B)(8) [formerly R.C. 149.43(B)(4)] provides that:

A public office or person responsible for public records is not required

to permit a person who is incarcerated pursuant to a criminal conviction or

a juvenile adjudication to inspect or to obtain a copy of any public record concerning a criminal investigation or prosecution or concerning what would be a criminal investigation or prosecution if the subject of the investigation or prosecution were an adult, unless the request to inspect or to obtain a copy of the record is for the purpose of acquiring information that is subject to release as a public record under this section and the judge who imposed the sentence or made the adjudication with respect to the person, or the judge's successor in office, finds that the information sought in the public record is necessary to support what appears to be a justiciable claim of the person.

{¶ 28} In *State ex rel. Russell v. Thornton*, 111 Ohio St.3d 409, 2006-Ohio-5858, 856 N.E.2d 966, the Supreme Court of Ohio stated that "[t]he language of the statute is broad and encompassing. R.C. 149.43(B)(4) [now R.C. 149.43(B)(8)] clearly sets forth heightened requirements for inmates seeking public records." *Id.* at ¶ 14.

{¶ 29} We review trial court orders in this context for abuse of discretion. (Citation omitted.) *State v. Atakpu*, 2d Dist. Montgomery No. 25232, 2013-Ohio-4392, ¶ 7. As was noted, this means that the trial court's decision must have been arbitrary, unreasonable, or unconscionable. *Blakemore*, 5 Ohio St.3d at 219, 450 N.E.2d 1140.

{¶ 30} In the trial court, Morris argued only that the records should be released because he was indigent and could not appear in person to request them. This does not demonstrate a justiciable claim for which the records were necessary. Establishing a "justiciable claim" "ordinarily involves identifying a 'pending proceeding with respect to which the requested documents would be material.' " *State v. Wilson*, 2d Dist.

Montgomery No. 23247, 2009-Ohio-7035, ¶ 5, quoting *State v. Gibson*, 2d Dist. Champaign No. 06-CA-37, 2007-Ohio-7161, ¶ 14. *See also State v. Dowell*, 8th Dist. Cuyahoga No. 102408, 2015-Ohio-3237, ¶ 7 ( indicating that "[a] 'justiciable' claim is one that is capable of affording appropriate relief and ordinarily involves identifying a pending proceeding to which the requested documents would be material.") (Citation omitted.)

{¶ 31} When Morris requested production of the transcripts, the trial court had already denied his motion for leave to file a motion for new trial, which was a final appealable order. *See, e.g., State v. Brown*, 186 Ohio App.3d 309, 2010-Ohio-405, 927 N.E.2d 1133, ¶ 17 (7th Dist.) ("denial of motion for new trial based on newly discovered evidence is a final appealable order"). (Citations omitted.) Morris also had not yet filed a notice of appeal from that decision. Thus, no proceedings were pending to which the requested documents would have been material. Furthermore, even if this were otherwise, Morris made no argument below about why the trial transcripts were material to anything; he only asserted that he was indigent and could not inspect the records in person.

{¶ 32} The records in question were also part of the trial court record and were not "newly discovered evidence." *See State v. Reid*, 2d Dist. Montgomery No. 24672, 2012-Ohio-1659, ¶ 11 (affirming rejection of defendant's R.C. 149.43(B)(8) request because he was provided with the requested records prior to trial). As was noted, the trial transcripts in this case were filed as part of Morris's direct appeal, and they contain a record of the proceedings, including hearings on Morris's motion to request a competency evaluation and his motion to suppress, and transcripts of the jury trial and the sentencing hearing.

**{¶ 33}** We observed in *Reid* that "[w]hile res judicata would not bar a post-appeal motion for a new trial based upon newly discovered evidence, * * * the information Defendant seeks regarding recorded 911 calls to police and the vehicle police impounded is not newly discovered, because it was either provided to defense counsel at trial or referenced in police reports provided to defense counsel at trial." *Id.* at ¶ 10, citing *State v. Davis*, 131 Ohio St.3d 1, 2011-Ohio-5028, 959 N.E.2d 516. Likewise, there is no indication in the record that the information Morris sought had not been provided to defense counsel during trial. In addition, based on our comments in *Reid*, transcripts of the trial proceedings would have been irrelevant even if an appeal had been pending when Morris requested the transcripts. Specifically, the issue in that situation would be, as it has been here, whether Morris presented "clear and convincing proof that he was unavoidably prevented from the discovery of the evidence upon which he must rely * * *," for filing the motion for new trial, and would, therefore, be permitted to file an untimely motion. Crim.R. 33(B).

**{¶ 34}** Although Morris contends on appeal that he requested a copy of the State's discovery file from the trial proceedings, including police reports, witness statements, autopsy reports, and photos, Morris did not, in fact, mention these items or the discovery file in the request for production he filed in the trial court. Instead, Morris only asked the court for "transcripts of his trial, or plea, and all pretrial hearings, sentencing, and documents * * *." Case No. 26949, Doc. #20, p.1. Trial courts are not required to read the minds of litigants. Furthermore, given the wide scope of discovery permitted under Crim.R. 16, these items would have been provided to Morris during the original trial court proceedings. Morris does not suggest otherwise on appeal; he merely says that he,

personally, did not receive all the items from his trial attorney. Even if true, this point is irrelevant and does not provide a basis for granting relief.

{¶ 35} Accordingly, the trial court did not abuse its discretion when it denied Morris's request for production of the trial transcripts. The Second Assignment of Error, therefore, is overruled.

## IV.   Conclusion

{¶ 36} All of Morris's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

HALL, P.J. and TUCKER, J., concur.

Copies mailed to:

Mathias H. Heck, Jr.
Andrew T. French
Bryan K. Penick
Matthew G. Bruce
Hon. Mary Katherine Huffman