[Cite as *State v. Wilson*, 2025-Ohio-392.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

|  |  |  |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 30178 |
| | : | |
| v. | : | Trial Court Case No. 2006 CR 04325 |
| | : | |
| JOSHUA EUGENE WILSON | : | (Criminal Appeal from Common Pleas |
| | : | Court) |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on February 7, 2025

. . . . . . . . . . .

JOSHUA EUGENE WILSON, Appellant, Pro Se

MATHIAS H. HECK, JR., by MICHAEL P. ALLEN, Attorney for Appellee

. . . . . . . . . . . .

HUFFMAN, J.

{¶ 1} Joshua Eugene Wilson appeals pro se from an order denying multiple pro se motions that he filed in January 2024 following his 2007 conviction for murder and

felonious assault. For the following reasons, the judgment of the trial court is affirmed.

## Facts and Procedural History

{¶ 2} When we affirmed Wilson's conviction on direct appeal, we set forth the following facts:

On October 8, 2006, D'Laquan Phillips and his uncle, Michael Phillips, were walking Michael's dog on West Third Street in Dayton, when two men, one dressed in all black and wearing a hooded sweatshirt and the other one wearing lighter colored clothing, confronted them. The two men accused D'Laquan Phillips of a trespassing offense. D'Laquan Phillips insisted they had the wrong man. An argument then ensued.

D'Laquan Phillips dropped his dog's leash when confronted by the two men and Michael Phillips overhead the argument between D'Laquan Phillips and the two men while he was untangling the dog from a bush into which it had run. Michael Phillips heard a gunshot and saw D'Laquan Phillips struggling with the man dressed in black, later identified as Defendant, Joshua Wilson.

D'Laquan Phillips attempted to flee from Defendant but Defendant shot D'Laquan Phillips in the back. Michael Phillips watched as D'Laquan Phillips, while lying on the ground, reached out and grabbed Defendant's pants leg. Defendant responded by shooting D'Laquan Phillips in the head. Michael Phillips ran to a neighborhood store and called police. D'Laquan Phillips died at the scene.

Detective Doyle Burke of the Dayton police department assembled a photospread that included Defendant's picture. Four days after this shooting occurred, Michael Phillips identified Defendant from that photospread as the man who shot and killed D'Laquan Phillips. Three other witnesses, Michael Huff, Jacqueline James and John Bridges, either heard and/or saw the shooting, although they could not identify the shooter. D'Laquan Phillips was shot eight times, once in the thigh, once in the hand, twice in the back, and four times in the head. All of the bullets and shell casings recovered from the victim's body or at the scene were fired from the same gun, which police found in an alley near the crime scene. Five days after this shooting, police arrested Defendant, who still wore a black hooded sweatshirt and had blood on his right shoe.

Defendant was indicted on one count of purposeful murder, R.C. 2903.02(A), one count of felony murder, R.C. 2903.02(B), one count of felonious assault involving serious physical harm, R.C. 2903.11(A)(1), and one count of felonious assault involving a deadly weapon, R.C. 2903.11(A)(2). A firearm specification, R.C. 2941.145, was attached to each of the charges. Following a jury trial, Defendant was found guilty of all charges and specifications. At sentencing, the trial court merged the two murder charges and imposed one fifteen year to life sentence. The court also sentenced Defendant to eight years on each count of felonious assault, and ordered all of the sentences to be served consecutively.

Finally, the court merged the firearm specifications and imposed one additional and consecutive three year prison term, for a total aggregate sentence of thirty four years to life.

*State v. Wilson*, 2008-Ohio-4130, ¶ 2-7 (2d Dist.).

{¶ 3} On January 9, 2024, Wilson filed a pro se motion for leave to file a motion to vacate his conviction under the postconviction relief statute or, in the alternative, a motion for leave to file a motion for new trial pursuant to Crim.R. 33. On January 12, 2024, without leave of court, Wilson filed pro se motion for new trial under Crim.R. 33(A)(2)(C). Finally, on January 31, 2024, Wilson filed a motion for the court to rule on his motions without a response from the State, citing R.C. 2953.21(D). Wilson attached the following to his January 9 and January 12 motions:

● His affidavit

● Page 136 of the transcript of his trial

● The autopsy report of the victim

● A Miami Valley Regional Crime Laboratory document listing, in part, the victim's clothing

● An August 30, 2023 Report of Prosecutor filed in response to a request for DNA testing

● August 15, 2023 correspondence to the prosecutor from the Property and Evidence Storage Supervisor listing evidentiary items related to Wilson's case, including fingernail scrapings, a Bic lighter, an "AA Kit," and "Misc. clothing" held in the police department property room

● September 20, 2023 correspondence from Attorney Erin Branham to Wilson that stated, "I don't see anything in your records about an AA kit or the fingernail scrapings recovered at the autopsy"

● Chain of Custody Reports for various items from Wilson's case that do not reflect the items identified in the August 15, 2023 correspondence

● A Miami Valley Regional Crime Laboratory document that lists Wilson's clothing.

{¶ 4} In his affidavit, Wilson stated that he had requested DNA testing on July 17, 2023, and as a result of the request, the State was required to file a report pursuant to R.C. 2953.75. As a result of the August 30, 2023 report in response to his request, Wilson allegedly learned "that the prosecution [was] withholding exculpatory evidence" material to his case, which led him to investigate. Specifically, Wilson stated that fingernail scrapings, an "AA Kit," a lighter, and miscellaneous clothing had not been "documented on the chain of custody evidence logs as items being collected" during the investigation of D'Laquan Phillips's death. Wilson claims that it became "clear to [him] that the prosecution suppressed exculpatory evidence" that was material to his case.

{¶ 5} According to Wilson's affidavit, he contacted Attorney Erin Branham to further investigate. He learned from her that there was nothing in his "records" about an "AA Kit" or fingernail scrapings. Wilson argued that his motion, affidavit, and exhibits established that "this exculpatory evidence is missing from the whole record" and proved that the prosecution had "suppressed" this evidence and never turned it over to the defense in response to its demand for discovery.

{¶ 6} Specifically, Wilson averred that the fingernail scrapings had been material to his case because the State's position at trial was that the victim had struggled with his assailant. Wilson asserted that he had been mistakenly identified. As such, he suggested that the results of DNA testing of the fingernail scrapings could have "been used to discredit witnesses and create reasonable doubt" but for the prosecution's interference with that opportunity. Wilson noted that the victim's uncle had initially accused someone else of killing the victim.

{¶ 7} On May 29, 2024, the trial court overruled Wilson's substantive motions and found his motion to rule without the State's response to be moot. Before addressing Wilson's assignments of error, we will review the trial court's decision denying Wilson's motions.

{¶ 8} Regarding the motion for leave to file a motion for new trial, the court noted that Wilson relied upon the prosecutor's report in response to a request for DNA testing, which was denied. The court further noted that Wilson asserted that he had been unaware of items related to his case and held in the police department property room prior to the filing of the prosecutor's report, including the fingernail scrapings, a lighter, an "AA kit," and clothing. It was unclear to the court if defense counsel had been aware of the items at the time of trial, and it was unclear from Wilson's affidavit and the exhibits attached to his motion to whom the fingernail scrapings, lighter, clothing, and "AA kit" belonged.

{¶ 9} The court found that Wilson's affidavit and supporting documentation did not establish "by clear and convincing proof that the evidence was suppressed." The court

found that Wilson had not offered any evidence that he could not have discovered the existence of the items in the property room within Crim.R. 33(B)'s 120-day time frame and had not described any investigative efforts he took during that time. The court observed that it was unclear when Attorney Branham had made public records requests or if she had even requested records from police department, but based on Wilson's claim that he only learned of those items in August 2023, "one could assume those requests were not made within 120 days of March 7, 2007, the date the verdict was rendered in this case."

{¶ 10} The court found that Wilson had presented no evidence that he had made public records requests to the police department within 120 days of his conviction; the only effort he made to discover the existence of items in the property room was to request discovery prior to trial. On this basis, the court concluded that Wilson had failed to show "by clear and convincing evidence that he was unavoidably prevented from discovering the evidence" on which his motion for new trial was based within the 120-day time frame as required by Crim.R. 33 and had not made "a prima facie showing that the state suppressed evidence."

{¶ 11} Regarding Wilson's motion for leave to file a petition for post-conviction relief, the court observed that Wilson did not allege that the United States Supreme Court had recognized a new federal or state right that applied retroactively to his case, and he also did not present any evidence that he could not have discovered the evidence by the exercise of reasonable diligence prior to the filing of the prosecutor's report. The court found that the only thing Wilson claimed to have done to ascertain whether the evidence

was in existence was to file a demand for discovery under Crim.R. 16. Wilson did not present any evidence that he made records requests to the police department within the time frame required to file a petition for postconviction relief.

{¶ 12} Finally, the court found that Wilson had not shown by clear and convincing evidence that, but for the alleged suppression of the existence of fingernail scrapings, miscellaneous clothing, a bic lighter, and an "AA kit," no reasonable factfinder would have found him guilty of the offenses for which he was convicted. The court again noted that there was no evidence to indicate from whom the fingernail scrapings had been collected or to indicate what an "AA kit" is or to whom it belonged; and without more information, the court found it "impossible to determine whether a reasonable factfinder would have found him guilty of the offenses." The court also found that Wilson's motion for leave to file a petition for postconviction relief was untimely.

{¶ 13} Wilson's appeal is limited to the denial of leave to file a motion for a new trial. He raises two assignments of error, which we will consider together.

THE TRIAL COURT ABUSED ITS DISCRETION BY DENYING DEFENDANT-APPELLANT'S MOTION FOR LEAVE TO FILE A MOTION FOR NEW TRIAL.

THE TRIAL COURT ERRED BY NOT CONDUCTING AN EVIDENTIARY HEARING.

{¶ 14} In his first assignment of error, Wilson argues that his state and federal rights were violated when the State withheld exculpatory evidence that, if it had been disclosed and used effectively, "may have made the difference between conviction and

acquittal." Wilson cites *Brady v. Maryland*, 373 U.S. 83 (1963). According to Wilson, the fingernail scrapings from the victim, the "AA kit," and clothing "were collected from an alternative suspect(s)," and the lighter was recovered from the scene. Wilson argues that he established a prima facie case of a *Brady* violation because the State did not deny the allegations set forth in his motion for leave to file a motion for a new trial in the trial court.

{¶ 15} Wilson argues that the State failed to produce the items at issue in discovery and "should not be able to contest his assertions for the first time at the appeal level." He asserts that the transcript page and police chain of custody logs attached to his January 9 motion established that the State had withheld the items at issue and that Wilson and his attorney "had zero knowledge" that the State was in possession of "possibly exculpatory information" until the report was filed. Wilson asserts that it was the State's obligation to learn of the evidence and produce it and that its failure to do so led to "the egregious and wrongful conviction of one who is actually innocent."

{¶ 16} Citing Attorney Branham's letter, Wilson asserts that, if the court had held a hearing, "it would have seen that [Branham] made her decision from looking at the entire case file in the case at bar, [and] that the 'AA Kit' and Fingernail Scrapings were not turned over." He argues that his October 31, 2006 demand for discovery established that the State suppressed the evidence, and he contends that defendants should have the opportunity to determine for themselves what evidence is exculpatory. According to Wilson, "had the collections of the victim's fingernail scrapings been disclosed to the defense and tested for DNA of [the] true assailant who tussled with the victim, [it] could

have made the difference between conviction and acquittal for" Wilson, who could have been "exonerated . . . from being present at the crime scene." Wilson asserts that the evidence would have impeached the testimony of the State's "star witness," Michael Phillips, leading to his exoneration at trial, and that the suppression of the scrapings established their materiality. Wilson suggests that the clothing belonged to an "alternative suspect," that he was misidentified in a photo spread by Phillips, and that he did not match the description of the suspect leaving the crime scene.

{¶ 17} The State asserts that the trial court could have automatically rejected Wilson's motion for a new trial because he filed it before the court had ruled on his motion for leave to file a motion for a new trial. The State also points out that that Wilson did not include an affidavit from defense counsel or any evidence establishing that he did not know and could not have known of the existence of the evidence at the time of trial or within 120 days afterward. Thus, the trial court did not abuse its discretion.

{¶ 18} In reply, Wilson asserts that he was not required to obtain an affidavit from defense counsel because the documents themselves, which were from State entities, demonstrated a prima facie showing of a *Brady* violation. Wilson argues that the State failed to produce any exhibits, "only [the] bare assertions that the evidence was disclosed" and that defense counsel could have known and not told Wilson about the evidence. He asserts that the items were not made known to him until after he applied for DNA testing in July 2023. Wilson denies that his affidavit was self-serving.

{¶ 19} In his second assignment of error, Wilson asserts that there was "a plethora of evidence" warranting a hearing and there were "many open-ended questions" that

could have only been answered by law-enforcement experts who were subjected to direct and cross-examination at an evidentiary hearing. The State responds that he was not entitled to an evidentiary hearing.

{¶ 20} Motions for a new trial are governed by Crim.R. 33. Crim.R. 33(A) sets forth the bases for granting a new trial and provides in part: "A new trial may be granted on motion of the defendant for any of the following causes affecting materially his substantial rights: . . . (6) When new evidence material to the defense is discovered which the defendant could not with reasonable diligence have discovered and produced at the trial. . . ."

{¶ 21} Except for motions based on newly discovered evidence under Crim.R. 33(A)(6), a motion for new trial "shall be filed within fourteen days after the verdict was rendered . . . unless it is made to appear by clear and convincing proof that the defendant was unavoidably prevented from filing his motion for a new trial . . . [.]" Crim.R. 33(B). In contrast, a motion for new trial based on newly discovered evidence "shall be filed within one hundred twenty days after the day upon which the verdict was rendered . . .[.]" *Id.*

In order to file a motion for new trial after the expiration of the time periods specified in Crim.R. 33(B), a defendant must first seek leave of the trial court to file a delayed motion. [*State v. Lanier*, 2010-Ohio-2921, ¶ 15 (2d Dist.), citing State v. Warwick, 2002 WL 1585663, *2 (2d Dist. July 19, 2002); *State v. Parker*, 2008-Ohio-5178, ¶ 16 (2d Dist.).] "To obtain leave, defendant must demonstrate by clear and convincing evidence that he or

she was unavoidably prevented from timely filing the motion for a new trial or discovering the new evidence within the time period provided by Crim.R. 33(B)." (Citations omitted.) *Warwick* at *2. "The reference to 'clear and convincing proof' means something more than bare allegations or statements in a motion." [*State v. Morris*, 2017-Ohio-1196, ¶ 19 (2d Dist.]

. . .

" '[A] party is unavoidably prevented from filing a motion for new trial if the party had no knowledge of the existence of the ground supporting the motion for new trial and could not have learned of the existence of that ground within the time prescribed for filing the motion for new trial in the exercise of reasonable diligence.' " *Parker* at ¶ 16, quoting [*State v. Walden*, 19 Ohio App.3d 141, 145-146 (10th Dist.1984).] "[A] defendant fails to demonstrate that he or she was unavoidably prevented from discovering new evidence when he would have discovered that information earlier had he or she exercised due diligence and some effort." [*State v. Lenoir*, 2016-Ohio-4981, ¶ 24 (2d Dist.), citing *State v. Metcalf*, 2015-Ohio-3507, ¶ 11 (2d Dist.), citing *Warwick*.].

*State v. Harwell*, 2023-Ohio-3657, ¶ 22 (2d Dist.), quoting *State v. Harwell*, 2019-Ohio-643, ¶ 16- 17 (2d Dist.).

{¶ 22} " 'Newly discovered evidence' is 'evidence of facts in existence at the time of trial of which the party seeking a new trial was justifiably ignorant.' " *State v. Love*, 2006-Ohio-6158, ¶ 43 (1st Dist.).

"Evidence which merely impeaches or contradicts evidence in the former trial is insufficient to support a motion for a new trial." (Citations omitted.) *State v. Wright*, 67 Ohio App.3d 827, 831 . . . (2d Dist.1990). " 'The test is whether the newly discovered evidence would create a strong probability of a different result at trial, or whether it is merely impeaching or contradicting evidence that is insufficient to create a strong probability of a different result.' " *Id.*, quoting *Dayton v. Martin*, 43 Ohio App.3d 87, 90 . . . (2d Dist.1987).

*State v. Morris*, 2017-Ohio-1196, ¶ 13 (2d Dist.).

{¶ 23} "When a defendant seeks leave to file a motion for a new trial under Crim.R. 33(B), the trial court may not consider the merits of the proposed motion for a new trial until it grants the motion for leave." *State v. Hatton*, 2022-Ohio-3991, ¶ 30, citing *State v. Bethel*, 2022-Ohio-783, ¶ 41, citing *State v. Brown*, 2011-Ohio-1080, ¶ 14 (8th Dist.). "The sole question before the trial court when considering whether to grant leave is whether the defendant has established by clear and convincing proof that he was unavoidably prevented from discovering the evidence on which he seeks to base the motion for a new trial." *Id.*

{¶ 24} A "trial court's decision 'whether to conduct an evidentiary hearing on a motion for leave to file a motion for a new trial is discretionary and not mandatory.' " *State v. Ambartsoumov*, 2013-Ohio-3011, ¶ 13 (10th Dist.), quoting *State v. Cleveland*, 2009-Ohio-397, ¶ 54 (9th Dist.) "A criminal defendant 'is only entitled to a hearing on a motion for leave to file a motion for a new trial if he submits documents which, on their face,

support his claim that he was unavoidably prevented from timely discovering the evidence at issue.' " *Id.*, quoting *Cleveland*, citing *State v. McConnell*, 2007-Ohio-1181, ¶ 7 (2d Dist.).

**{¶ 25}** We review the trial court's denial of leave to file a motion for a new trial for an abuse of discretion. *State v. Devaughns*, 2015-Ohio-452, ¶ 15 (2d Dist.). " 'Abuse of discretion' has been defined as an attitude that is unreasonable, arbitrary or unconscionable." *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161 (1990), citing *Huffman v. Hair Surgeon, Inc.* 19 Ohio St.3d 83, 87 (1985). "It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary." *Id.* "A decision is unreasonable if there is no sound reasoning process that would support that decision. It is not enough that the reviewing court, were it deciding the issue de novo, would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result." *Id.*

**{¶ 26}** The trial court reasonably concluded that Wilson had failed to show that that he was unavoidably prevented from timely requesting a new trial or discovering the evidence within the time period provided by Crim.R. 33(B). Thus, the trial court did not abuse its discretion in denying leave to file a motion for new trial. The correspondence from Attorney Branham was hearsay,[1] and the court was free to disregard it. The trial

---

[1] Hearsay "is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted in the statement." Evid.R. 801(C).

court reasonably determined that Wilson had provided no evidence that he could not have discovered the items at issue within the 120-day time frame set forth in Crim.R. 33. According to Wilson, the fingernail scrapings were from the victim, and the transcript page attached to his motion, which discussed the bagging of the victim's hands, supported this conclusion. The following exchange occurred at trial during the direct examination of Dr. Kent Harshbarger, the forensic pathologist who performed the autopsy on the victim:

> Q. . . . Doctor you made mention of some paper bags that appeared to be on the hand or hands of the victim, tell us a little more about that, how those bags got on the victim's hands and why.
>
> A. . . . The bags are put on either by the crime scene evidence crew with the police department or our investigators will place those bags on the hands. Their purpose is to contain any trace evidence that might have been present under the fingernails. If evidence, if it turns out to be a close contact cause of his death, for instance a knife or a fight or something, we look under the nails, we look on the hands for any kind of evidence that may have transferred. Also in gunshot wound cases it is potential [sic] to get gunshot residue off the hands to see if the person, the decedent may have fired a weapon or not as well.

This evidence supported a conclusion that Wilson knew at trial that the victim's hands had been bagged to preserve evidence.

{¶ 27} Wilson also pointed to a lighter and clothing recovered from the scene. It was unclear to whom the miscellaneous clothing belonged, although Wilson claimed that

it was collected from unidentified "alternative suspect(s)." The only references to clothing in the documents from the Miami Valley Regional Crime Laboratory on which Wilson relied referred to the clothing of the victim and Wilson. Wilson did not identify the "AA Kit," but in common criminal justice parlance, AA testing refers testing for gunshot residue. The remaining items, like the fingernail scrapings, originated from the 2006 crime scene and were not newly discovered evidence. The trial court reasonably concluded that the items on which Wilson relied did not create a strong probability of a different result at trial, given the overwhelming evidence of Wilson's guilt.

{¶ 28} Although convicted in 2007, Wilson did not request DNA testing until 2023. He appealed from the denial of his application for post-conviction testing, and we affirmed the judgment of the trial court. *State v. Wilson*, 2024-Ohio-4712, ¶ 18 (2d Dist.) ("It is undisputed that DNA testing was generally accepted, admissible, and available at the time of Wilson's trial.") Wilson could have sought DNA testing at the time of his trial (and learned of the allegedly suppressed evidence at that time). In other words, the documents submitted by Wilson, on their face, did not support his claim that he had been unavoidably prevented from timely discovering them. Wilson's assertions about the alleged source of the miscellaneous clothing being another suspect and the alleged exculpatory nature of all of the items were purely speculative. Accordingly, we cannot conclude that Wilson was unavoidably prevented from discovering the evidence, and on this record, Wilson's assertion that the State withheld the evidence was merely supposition. Wilson's first assignment of error is overruled.

{¶ 29} Further, Wilson was not automatically entitled to a hearing on his motion for

leave to file a motion for a new trial. Having found that the documents submitted with Wilson's motion did not support the claim that he had been unavoidably prevented from timely discovering the evidence, the trial court was not required to hold a hearing. Accordingly, Wilson's second assignment of error is overruled.

{¶ 30} Having overruled both of Wilson's assigned errors, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

EPLEY, P.J. and TUCKER, J., concur.